Nola Rhoads v. J. A. Rhoads, Appellant.—119 S. W. (2d) 247.

Division Two, August 17, 1938.

*H. D. Green* and *A. W. Landis* for appellant.

*Homer Rinehart* for respondent.

COOLEY, C.—By this suit, tried to the court as an action in equity, the plaintiff seeks to have adjudged in her the title to forty acres of land in Howell County, described as:—the northeast quarter of the northeast quarter of Section nineteen, Township twenty-two, Range nine. She prevailed below and defendant appealed. We shall refer to the parties as plaintiff and defendant. Plaintiff contends that the defendant conveyed said land to her by warranty deed which, however, was not recorded, and that he afterwards wrongfully obtained possession of and destroyed the deed, leaving the title still appearing of record in him. Defendant denies that the deed was ever delivered and also pleads estoppel.

This suit was instituted April 1, 1935. Prior thereto plaintiff and defendant had been twice married to and divorced from each other. The first marriage and divorce cuts no figure in this case except to explain the source of plaintiff's title to another tract of land of about forty-one acres which she admittedly owned at the time of her second marriage to defendant. They were married to each other the second time on April 15, 1933, and were divorced in February, 1935. Reference hereinafter to the divorce or divorce proceedings will be to said second divorce. There was no issue of either of those marriages, but each party had children by former marriages.

Plaintiff testified in substance that defendant entreated her to remarry him and she agreed to do so if he would deed her the forty acres here in question, which he agreed to do; that they went to Koshkonong, Missouri, on April 13, 1933, where the deed was made out, signed and acknowledged by defendant, and that on April 15th he delivered it to her, after which they were married; that she placed the deed (without having had it recorded) in a lock box in their home, which box, after a certain family difficulty in September, 1933, defendant took to a bank in West Plains, where it remained for a time. It was later returned to the home but the deed was missing therefrom. Plaintiff was corroborated as to delivery of the deed by her son, who testified he was present when it was delivered.

Defendant's testimony on this issue was to the effect that while he had signed and acknowledged the deed he had never delivered it.

He testified that shortly before the second marriage plaintiff had said she wanted the "home forty"—the one in controversy and on which the buildings were located,—and that he told her he would "swap" her that forty for the forty-one acres she owned, and that she at first agreed; that he executed the deed for that purpose but did not deliver it, since plaintiff was not then prepared to make her deed; that his deed was never placed in the lock box but he kept it in his possession till plaintiff told him she had decided not to trade and he then destroyed the deed. At the divorce trial he had testified that he had never "made a deed down at Koshkonong." In the instant case, after· he admitted he had there signed and acknowledged a deed, he was cross-examined at some length about said testimony given in the divorce hearing. He claimed to be unable to remember just what testimony had been given by either him or the plaintiff regarding the "making" of the deed at Koshkonong, but did say in substance that as he remembered it, the question asked him was whether he had delivered a deed.

On the question of estoppel defendant contends that plaintiff is conclusively estopped by the allegations of her. divorce petition to claim title to the land in question and, further, that if not thus conclusively estopped she is precluded from recovery on principles of equitable estoppel or estoppel *in pais*.

The facts bearing upon this issue are in substance as follows: In her divorce petition the plaintiff, after setting forth the grounds on which she sought the divorce, alleged "that defendant is the owner of a good and well improved farm of 160 acres situated in the County of ———— the value of three or four thousand dollars," and of personal property consisting of thirteen cattle, farm machinery, household goods, "and other specific property," and "several hundred dollars" in money and notes and that he had a "good position as salesman with a motor company." The petition prayed divorce and alimony. It was signed by the plaintiff and verified by her "according to her best knowledge and belief" in the statutory form. Defendant's pleading in the divorce suit is not before us.

It is admitted that the forty acre tract here in controversy was part of the 160 acres referred to in the divorce petition and that the defendant then owned no other land—facts known to the plaintiff when she filed the divorce suit. At the trial of that suit the matter of the above mentioned deed was gone into. The record in the instant case shows that in the divorce trial the plaintiff testified that the defendant had executed and delivered to her the deed to the forty in question and that the defendant denied having "made" such deed or any deed at Koshkonong. He says now that at the divorce trial he understood the questions propounded to him referred to delivery, —a contention hardly justified by the record. The portions of testimony set out by questions and answers indicate that in the divorce

trial the term "make a deed" or "made a deed" at Koshkonong referred to the signing and acknowledgement thereof, not to its delivery. The plaintiff never testified or claimed that the deed had been delivered at Koshkonong.

Some time during the hearing of the divorce suit and before judgment therein, but apparently after the testimony regarding the making and delivery of the deed had been given, the parties, plaintiff and defendant, upon the suggestion and advice of their attorneys, made, in writing, the following "stipulation" or agreement, which was filed with the circuit clerk.

"Stipulation.

"It is agreed and stipulated by and between Nola Rhoads, party of the first part and J. A. Rhoads, party of the second part, that whereas there is now pending a divorce action between the parties hereto in the Circuit Court of Howell County, Missouri, in which Nola Rhoads is plaintiff and J. A. Rhoads is defendant, and whereas the parties to said action being desirous of settling their rights of property before the said divorce action is decided, now therefore the parties agree:

"1st. J. A. Rhoads is to pay Nola Rhoads the sum of two hundred dollars in full settlement of all her rights in and to the property of J. A. Rhoads.

"2nd. J. A. Rhoads is to pay General Rogers an attorney's fee of $50.00, in said divorce action.

"3rd. J. A. Rhoads is to pay the costs of said divorce action.

"Signed in triplicate by the parties hereto this 9th day of February, 1935.

"G. W. Rogers,
"Attorney for Plaintiff.
"H. D. Green,
"A. W. Landis,
"Attorneys for Defendant."

What effect, if any, was accorded by the court to said stipulation we are not advised by the record. The judgment in that case is not before us. All the information the record here gives us is the admitted fact that the parties were divorced and a statement by defendant in his testimony (not denied) that the divorce was granted to him on his cross bill.

In his answer in the instant case defendant averred that when the divorce suit was filed he was the owner of the forty acres in question and "that by reason of the allegations contained in plaintiff's petition (in the divorce suit) said matter has been fully adjudicated and plaintiff is now barred from attempting to recover under this action.

"Defendant further answering says that by reason of above facts

and after the adjudication of the divorce case and settlement between plaintiff and defendant, and by reason of the allegations contained in plaintiff's divorce petition, defendant was led to believe that plaintiff did not claim any further ownership in the forty acres aforesaid and that by reason of such fact the defendant has since deeded all of the 160 acres with the exception of this forty acres for valuable consideration to defendant's children, leaving him only said forty acres of land, all of which defendant states he would not have done had it not been for the allegations contained in said divorce petition and the settlement made."

The only evidence in the record as to the conveyance by defendant to his children of the 120 acres consists of the following excerpts from his own testimony, as stated in his abstract of the record: "At the time of the divorce suit I made a property settlement with her. I agreed to pay her $200.00 and $50.00 attorney fee and made the payment of those amounts. Since that time I have deeded away all of my property, except the forty acres in question. . . . I deeded one hundred twenty (120) acres of this land to my children."

It is admitted that defendant paid the $200 to plaintiff and the $50 attorney fee called for by the above quoted stipulation.

Plaintiff testified that the reasonable value of the forty acres in question was $1500 and that it was "the most valuable part of the 160 acres," but that she did not know the value of the 120 acres. There was no evidence as to the value of the 120 acres, nor any explanation of what plaintiff meant by "the most valuable part of the 160 acres,"—whether she meant the forty was worth more than the whole one hundred and twenty or more than any one forty acre part thereof.

### I. *Of delivery of the deed*:

The circuit court found that the deed in question had been delivered, a finding which we think in accordance with the evidence. Plaintiff's testimony, corroborated by that of her son, was clear and positive to that effect. Defendant's testimony was equally positive the other way. But defendant's testimony at the divorce trial to the effect that he had never *made* the deed, meaning, as the court may well have believed and as we believe, that he had not signed and acknowledged it, contradicted his testimony at this trial wherein he admitted that he had signed and acknowledged the deed at Koshkonong. The latter fact had been shown at the trial of this case by cogent evidence in addition to plaintiff's positive testimony before defendant took the stand. The suit was instituted less than two months after the determination of the divorce suit. It was tried some two and a half months later,—only about four months after the trial of the divorce suit. At this trial defendant not only contradicted testimony he had given at the divorce trial, claiming he had misunderstood certain questions, but disclaimed recollection of relevant testimony given

by his wife and by himself at the divorce trial regarding the execution of the deed, then a subject of sharp dispute between the parties. Such contradictions and disclaimer of recollection, under the circumstances, may be considered in determining the weight and credibility of defendant's testimony. The evidence on the issue of delivery was oral. The trial court had the witnesses before it. In equity cases we are not bound on appeal by the chancellor's findings. But, as said in Stibal v. Nation (Mo.), 98 S. W. (2d) 724, 729 (4), "We ordinarily give great weight thereto and will usually defer to them, where they are based on oral testimony heard by him, unless we are convinced that they are clearly erroneous or not based upon substantial testimony."

It is not contended that the deed, if made and delivered, was insufficient to pass title, though not recorded. Marriage is not only a good but a valuable consideration. Even had defendant not delivered the deed, yet if, in consideration of the marriage, he had agreed to do so, and upon such agreement the marriage had been consummated, a court of equity could have compelled him to do so. [See on this proposition, Wood & Houston Bank v. Read et al., 131 Mo. 553, 33 S. W. 176.] We approve the circuit court's finding on the question of delivery.

## II. *Of estoppel*:

On the question of estoppel appellant's main reliance, as indicated by his brief here, is upon the proposition that plaintiff is *conclusively* estopped, as by pleading and record, whether or not defendant was misled or suffered injury thereby; in other words, as we understand his contention, a legal and conclusive estoppel, as distinguished from equitable estoppel, by reason of her allegation in her divorce petition that defendant owned one hundred and sixty acres of land, of which, as she admitted at the trial, this forty acres formed a part. In his answer defendant pleaded that the question of title to this forty was adjudicated in the divorce judgment. This contention seems now to be abandoned, and properly so. It is not shown that the court, in the divorce suit, adjudged or attempted to adjudge the title to this forty or any other property claimed by either party, and it could not have done so in that action. [See Aylor v. Aylor, 184 Mo. App. 607, 170 S. W. 704.] It is not shown that the court in any manner considered or acted upon the question of ownership of this land in determining the divorce suit. Presumably it did not, because defendant says the divorce was granted to him on his cross bill, in which case, alimony (except alimony *pendente lite*) could not be awarded to the wife. [Sec. 1358, R. S. 1929, Mo. Stat. Ann., p. 1573; McIntire v. McIntire, 80 Mo. 470.] The allegation in plaintiff's divorce petition as to property owned by the defendant was obviously made only for consideration by the court in awarding alimony if she prevailed. *Res adjudicata* is not shown.

We revert to defendant's contention that plaintiff is conclusively estopped by her pleading in the divorce suit. In our opinion this contention cannot be sustained. In 21 Corpus Juris, page 1064, section 23, it is said, in discussing estoppel by pleading or record, that

"The rules as to the conclusiveness of allegations in pleadings in the same case do not apply with the same strictness in the case of pleadings in another case or proceedings. Although statements in pleadings constitute solemn judicial admissions of fact requiring evidence to contradict them, independent of the estoppel raised by the judgment in the case, allegations or recitals in pleadings in a prior case or proceeding do not as a rule operate as a technical estoppel by record against the party making them, in a subsequent case, proceeding, or transaction."

In the same section it is further said that no estoppel by record can be invoked where the allegations or recitals did not conclude the pleader in the prior proceeding, as where the action was discontinued without a decision on the merits, "nor where the allegations were made through inadvertence or by mistake."

In 21 Corpus Juris, page 1233, section 238, it is said to be the general rule that allegations or admissions in pleadings in a former action will ordinarily estop the party making them from denying their truth in a subsequent action in which he is a party to the prejudice of his opponent *where the usual elements of estoppel by conduct are present.* (Italics ours.) The next section, 239, defines the "Elements, extent and limits" of said rule thus:

"In order to estop a party by allegations or admissions in pleadings in a former action or proceeding it is essential that the issues involved should be the same, and that the allegations or admissions must have been material to the matters adjudicated in the former action. Also there must have been a determination of the prior action, or at least the allegations or admissions must have been acted on by the court in which the pleadings were filed or by the parties claiming the estoppel. There can be no estoppel where the admissions or statements were made through mistake, or without full knowledge of the facts, especially where the facts were within the knowledge of the adverse party; or where there is no actual inconsistency between the averments of the pleadings in the former action and the position taken in the subsequent action. Also the party claiming the estoppel must have been ignorant of the real facts, and, in reliance on the statements or admissions, he must have changed his position and sustained prejudice by reason thereof."

The latter two sections of Corpus Juris, viz., 238 and 239, deal with equitable estoppel rather than the technical estoppel by pleading or record so strongly relied upon by defendant.

As we have pointed out, the petition in the divorce suit did not present an issue of title to the land in question which could have been ad-

judicated in that action. The court could not in that action have adjudged the title to be in the plaintiff and divested from the defendant any interest he might be claiming (Aylor v. Aylor, supra,) and did not attempt or purport to do so. As shown above, the court evidently did not consider or act or attempt to act upon the question of ownership of the land here in question. The stipulation of property settlement filed in the divorce suit mentions no specific property, and moreover is not shown to have been considered or acted upon by the court or even submitted to the court for consideration. On the record before us plaintiff was not conclusively estopped as by pleading and record in the divorce suit from asserting title to the land in question in the present action.

Neither do we think plaintiff is precluded from recovery on principles of equitable estoppel or estoppel *in pais*. The rule as to such estoppel is considered, with citation of numerous authorities, in Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 235 S. W. 435, wherein it is held that if both parties know the facts or have equal means of ascertaining them there can be no estoppel, and the court quotes (290 Mo. l. c. 336, 235 S. W. l. c. 443) the rule as stated in Bigelow on Estoppel (5 Ed.), page 570, thus:

"First. There must have been a false representation or a concealment of material facts. Second. The representation must have been made with knowledge, actual or virtual, of the facts. Third. The party to whom it was made must have been ignorant, actually or permissibly, of the truth of the matter. Fourth. It must have been made with the intention, actual or virtual, that the other party should act upon it. Fifth. The other party must have been induced to act upon it."

In this connection see also 21 Corpus Juris, page 1233, section 239, supra.

Defendant knew at the divorce trial that the plaintiff was claiming that he had conveyed this land to her and that, notwithstanding the allegations of her divorce petition, she was still claiming to own it. He heard her testimony that he had delivered the deed to her and that her attorney had told her the land was hers and he would get it for her. He was himself examined and cross-examined as to the making of that deed. He knew the facts. With such knowledge he made the settlement in the divorce suit. There is no evidence in the record of the instant case as to what induced him to make that settlement other than as shown by the "stipulation" above quoted, by which the plaintiff agreed to accept $200 in settlement of her rights in the *defendant's* property. But she did not therein agree to release her claim to this forty acres, which she was apparently then claiming as hers. Defendant was represented by able counsel in the divorce case. If it was intended and understood that by the settlement plaintiff was releasing her claim of ownership of said forty acres it is

944

strange that the stipulation was utterly silent on that important point.

As to the sale of the remaining 120 acres to his children defendant's evidence does not prove his pleaded contention that he made such sale because of and in reliance upon the allegations in plaintiff's divorce petition and the settlement made in that case. We have set out above all that defendant testified to regarding said sale. He said nothing about why he made the sale, or the consideration received. His pleading says it was a valuable consideration. There was no evidence other than defendant's testimony relative to said sale, the reason for making it, or the consideration received. For aught that appears in the record such sale may have been for full value and might have been made regardless of the incidents of the divorce suit.

The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.