CHARLES E. CAMPBELL, EMMA WYATT, WILLIAM F. HARRA, JULIA S. COX, AMOS HARRA, ELIZABETH LATIMER, RAYMOND HARRA, FRANCES HARRA, BURL JOHNSON, FRANK L. HARRA, NETTIE HARRA, AUGUSTA HARRA LAWRENCE V. LULA WEBB, Administratrix of the Estate of LEWIS S. WEBB, Deceased, Appellant.—No. 39977.— 202 S. W. (2d) 35.

Division One, April 21, 1947.

Rehearing Denied, May 12, 1947.

*David H. Bresler, Henry Riederer* and *White & Hall* for appellant.

*Olney Burrus, Rufus Burrus* and *Donald W. Johnson* for respondents.

468

DALTON, C.—Action for damages for breach of a written contract. At the close of all the evidence,.the court directed a verdict for plaintiffs in the sum of $48,392.00. Defendant has appealed.

The contract was dated October 9, 1935, and concerned the handling and sale of a 352 acre farm in Jackson County. The contract was entered into between certain heirs of Frank Harra, deceased, and Lewis S. Webb. At the time of Frank Harra's death (prior to October 9, 1935), the real estate was subject to a deed of trust securing notes for a total of $25,600.00 and certain delinquent taxes. The heirs were unable to refinance the indebtedness or sell the property. It, was conveyed to Webb under the terms of the contract, which provided that Webb was to take possession, collect rents and profits, refinance or pay the incumbrance, pay taxes and interest and give the first parties five years "from the conveyance" to find a purchaser. If a purchaser was found, Webb was to convey to him and pay the first parties the amount obtained, less the amount of the incumbrance. If no purchaser was found, Webb was to own the property absolutely "at the expiration of said five year period."

The contract recited that "the parties of the first part have conveyed to the party of the second part by deed of warranty . . . vesting the full and legal title thereto in the party of the second part . . . upon the following terms and conditions." The detailed terms and conditions included section seven as follows: ". . . *the conveyance* of said real estate by parties of the first part *and the terms of this contract* shall not be finally and fully effective until the party of the second part shall have received by proper guardian's deed of conveyance the undivided interest of any infant or infants of, in, and to, the real estate hereinbefore described." (Italics ours.) Webb signed and acknowledged the contract on October 14, 1935.

The same twenty seven persons who signed the contract as first parties executed and delivered the deed to Webb. The deed was dated October 9, 1935, and purported to convey all of the "several undivided rights, titles, and interest" of the grantors "in and to" the real estate described, "subject to all taxes and incumbrances of record." Respondents point to the recitals in the contract and say this deed conveyed the "full . . . title" to Webb, while appellant says the deed was only signed by twenty seven of the thirty one heirs of Frank Harra, deceased. In any event, Webb subsequently obtained quit claim deeds from Fred C. Harra, Clara Harra, his wife, and Maxie B. Harra, and a guardian's deed, dated February 17, 1936, purporting to convey the 1/256 interest of Arthur Morgan Balston, Jr., a minor, pursuant to the sale of the minor's interest to Webb on January 24, 1935.

The deed, dated October 9, 1935, (hereinafter sometimes referred to as the conveyance), was acknowledged by the several grantors (heirs) between October 9 and December 31, 1935. The contract and deed forms were prepared by an attorney for Webb and were delivered to him, but there is no evidence as to when the contract was

finally executed or when the deed was delivered. The deed was recorded February 3, 1936.

Webb took possession of the real estate, made payments on the indebtedness and refinanced or extended the balance. Thereafter, on Octobr 12, 1940, he signed an option to one Warner. The option had been requested on Monday, October 7, 1940, but Webb said the property was tied up under contract with the heirs until Wednesday or Thursday. He, therefore, delayed signing the option until Saturday. The option expired December 1, 1940. On December 11, 1940, Webb sold the property ▮▮▮▮ to the United States Government for $62,400.00. The deed was delivered and payment made January 28, 1941.

The present action was instituted on November 12, 1941 by twelve of the parties signing the contract with Webb. The original petition alleged that the twelve plaintiffs with other heirs of Frank Harra, deceased, had made the conveyance to Webb on October 9, 1935 under the terms of a contract of the same date; that the contract provided "that if, at any time within five years *from the date* of the conveyance . . . a purchaser could be procured . . . said defendant would convey said property to said purchaser" (Italics ours); and that a purchaser was found within five years, but that Webb had fraudulently refused to consummate the sale until after the five year period had elapsed. It was alleged that the twelve plaintiffs were entitled to recover, as actual damages, a 6/8 interest in the difference between the amount of the incumbrance and the sale price. Ultimately, a third amended petition, with two counts, was filed. The first count was an action at law for damages for breach of the contract, supra. The second count was in equity and charged that the conveyance to Webb was a trust conveyance under the terms of the contract and sought an accounting against Webb's estate. We are not here concerned with the second count, since the judgment appealed from was not based thereon. The third amended petition further purported to be a class suit on behalf of all of the heirs of Frank Harra, deceased. Recovery was sought of the entire difference between the amount of the incumbrance and the sale price. As amended at the close of the evidence, the petition charged that the conveyance was made February 17, 1936 and the sale by Webb was made within the five year period fixed by the contract.

The answer of defendant-appellant denied that the action was an authorized class action, alleged that the third amended petition, as filed, constituted a departure from the previous alleged cause of action, pleaded the statute of limitations in bar of the added parties plaintiff and denied that Webb sold the property within the five year period and other allegations of the petition. The cause was tried to a jury on the first count of the third amended petition and the trial court directed a verdict for plaintiff, as stated.

Appellant contends that the court erred (1) in directing a verdict for plaintiffs and refusing to direct a verdict for defendant, (2) in permitting plaintiffs to sue and recover as a class, (3) in permitting recovery for claims which were barred by the statute of limitations and for parties who were deceased, (4) in permitting the petition to be amended at the close of the evidence so as to constitute a departure and (5) in failing to take into account the expenses of the sale and the sum required to be paid to the tenant in order to make the sale.

The parties agree that the contract and deed should be construed together; and that Webb took the real estate subject to all of the terms and conditions set forth in the contract as fully ''as if these conditions were written in the deed itself.'' Appellant says that the rule of strict construction applies, while respondents say the rule ''is subject to that which obtains with respect to all contracts requiring the court to give effect to plain intention of the parties as gleaned from the language employed in the covenant when viewed in the light of the entire context of the instrument.'' Kitchen v. Hawley, 150 Mo. App. 497, 503, 131 S. W. 142, 143; University City v. Chicago, R. I. & P. R. Co., 347 Mo. 814, 149 S. W. (2d) 321, 327. There is no contention that the evidence presented any issuable fact for a jury.

Appellant's contention that respondents were not entitled to recover is based upon the theory that the conveyance was made October 9, 1935; that respondents' pleadings conclusively estopped them to deny that October 9, 1935, was the effective date of the conveyance; and that, since conditions and limitations in conveyances should be strictly construed against the grantors, the date of the contract and conveyance controls. Appellant points to the contract and deed, both dated October 9, 1935, and insists that respondents' ''right to find a purchaser began at that date and ended five years later.'' Appellant relies on the recital in the contract ''that the parties of the first part have conveyed . . . by deed of warranty . . . vesting the full and legal title thereto in the party of the second part.'' Appellant says that the agreement recognizes October 9, 1935 as the date of the conveyance; and that the deed ''became effective as a conveyance at that time even though it might be considered a conditional conveyance as between the parties.'' Appellant further contends that, when a deed is delivered pursuant to the terms of a contract of sale, the deed relates back to the contract and title is considered, as between the parties, as having vested in the grantees from the time the contract was made. Schmidt v. City of Tipton, (Mo. App.), 89 S. W. (2d) 569; Hernandez v. Prieto, 349 Mo. 658, 162 S. W. (2d) 829, 831. Appellant insists that section seven of the contract was not for the benefit of the parties of the first part, but only to relieve Webb of his obligation to discharge ''the defaulted loan on the property,'' in case deeds from minors could not be obtained; and that ''it was never intended by the parties'' that sec-

472

tion seven should in any way affect the starting date of the five year period, which ran from *the date of the deed.*

Various provisions in the contract refer to the five year period as "five years from the conveyance of said real estate to the party of the second part." These provisions must be contrasted with other provisions giving Webb all rents and profits "from this date," and giving him the right to make repairs "from *the date of the conveyance* of said premises to him." (Italics ours.) We have further noted, supra, that the last acknowledgment on the deed, was not taken until December 31, 1935, and we may assume the deed was not delivered or operative prior to that date. Of course, the equitable doctrine of relation back to the date of the contract could not control if an express provision of the contract gave some other date as the effective date of both contract and deed.

█ Appellant says "the record is absolutely silent as to whether the Balston deed was necessary or why Webb got it"; that appellant "did not admit the interest of the plaintiffs in the real estate"; and that "an admission of the relationship to Frank Harra is entirely different from the claimed admission as to the alleged interest of the various parties."

The third amended petition alleged that upon the death of Frank Harra his property vested in certain named persons and the fractional interests acquired were set out. It was further stated that certain of these persons had died and their heirs were named. It was alleged that Mollie Johnson had a 1/16 interest and "that Mollie Johnson departed this life and her interest thereto vested in Burl Johnson and to Arthur Balsom (sic), Jr., the son and the descendant of Mina Balsom, a deceased daughter." In the course of the trial appellant agreed "that the allegations of relationship, of heirship, to the ancestor Frank Harra are correct in the third amended petition"; and that Frank Harra was the common source of title. It further appears that the guardian's deed was offered and received in evidence without objection; and there was testimony that the guardian's deed was in Webb's chain of title to the property. We think the record and admission were sufficient to establish that the minor, Arthur Morgan Balston, Jr. had an interest in the described real estate and that it was acquired by Webb on February 17, 1936.

█ Were respondents estopped to contend that February 17, 1936 was the effective date of the contract and conveyance? Appellant refers to respondents' pleadings as "conclusive admissions of record." As stated, the original petition was based upon the theory that the five year period began October 9, 1935, and that Webb received an offer within the five year period, but wrongfully failed to consummate the sale until after the five year period had expired. The amendment changing the date for the beginning of the five year period to February 17, 1936 was not made until the close of the trial on April

30, 1946. Plaintiffs were further permitted to amend their pleadings to allege that Webb sold the property within the five year period fixed by the contract. All of the allegations now relied upon were abandoned prior to a submission of the cause.

Appellant has called our attention to no case holding that a party is conclusively bound by his admissions in abandon pleadings and we find none to that effect. While such pleadings were admissible in evidence as admissions, and were so admitted, they were not conclusive. See, McCurry v. Thompson, 352 Mo. 1199, 181 S. W. (2d) 529; Rhoads v. Rhoads, 342 Mo. 934, 119 S. W. (2d) 247; Everhardt v. Garner, (Mo. App.), 100 S. W. (2d) 71, 73. We are further of the opinion that the allegations concerning the effective date of the contract and conveyance were legal conclusions. Appellant concedes that the deed and contract should be construed together and that the conveyance to Webb was subject to the conditions recited in the contract. When the five year period began and when it ended were questions of law. Respondents were not bound by their legal conclusions in their abandoned pleadings. "Allegations in the nature of conclusions about the meaning of the contract but inconsistent with its stated terms, of course, cannot be considered." D'Oench v. Gillioz, 346 Mo. 179, 139 S. W. (2d) 921, 923; St. Joseph & St. Louis R. Co. v. St. Louis, I. M. & S. R. Co., 135 Mo. 173, 198, 36 S. W. 602. Appellant further takes the position that, since respondents offered the deed dated October 9, 1935, in evidence, they are conclusively bound by the date thereof as its effective date. This contention is without merit, the contract and deed must be construed together. Appellant further contends that both parties have construed the contract as fixing the period beginning October 9, 1935, towit, Webb by refusing to sign an option until October 12, 1940 (when he claimed he was no longer "tied up under a contract with the heirs") and respondents by allegations in their abandon pleadings. If the contract is free from ambiguities, it must be construed as written and the construction given by the parties may not be considered. J. E. Blank v. Lennox Land Co., 351 Mo. 932, 174 S. W. (2d) 862, 868.

We think the contract is clear, definite and certain in providing that *"the conveyance of said real estate"* by parties of the first part and *the terms of this contract* shall not be finally and fully effective until the party of the second part shall have received by proper guardian's deed of conveyance the undivided interest of any infant or infants of, in, and to, the real estate hereinbefore described." (Italics ours.) The specific applicable provision of the contract with reference to the effective date of the contract and conveyance control over all general recitals and provisions. Myers v. Wood, 173 Mo. App. 564, 571, 158 S. W. 909. Section seven was equally binding upon all parties. We hold that the effective date of the contract and conveyance was February 17, 1936 and that the five year period ran from

that date. We reach the same conclusion from a careful consideration of the contract as a whole. The court did not err. in refusing to direct a verdict for appellant. Nor did the court err in holding that the sale on January 28, 1941 was within the five year period.

 We next consider whether the court erred in directing a verdict including the shares of persons whose claims had been barred by limitations, and permitting recovery on behalf of the heirs of deceased persons. As stated, on November 12, 1941, twelve of the twenty seven signers of the contract instituted the original action against Webb. The petition set out the fractional interests of the parties as tenants in common of the real estate conveyed to Webb and their claimed rights and interests under the contract and sought recovery for its breach, but only for the interests of the parties-plaintiff therein. Thereafter, on May 6, 1942, Webb died and, on February 8, 1943, an administrator was appointed. Notice of administration was published beginning November 18, 1943, and, thereafter, the cause was revived against the administrator of Webb's estate. Of the original plaintiffs, one filed a withdrawal as a party-plaintiff and died shortly thereafter. Another of the original plaintiffs died before the trial. Apparently, the cause was not revived as to either of these parties. The remaining parties-plaintiff did not file their third petition or attempt to change the cause into a class action on behalf of all of the heirs of Frank Harra (including those who had not previously joined in the action) until December 7, 1945. It was admitted that no claims had been filed against Webb's estate, other than as evidenced by the original petition in this action pending at the time of Webb's death. There is no contention that it was necessary for the original plaintiffs to file claims. Sec. 183 R. S. 1939. Appellant contends that the claims of all parties other than the original plaintiffs were barred by the one year statute of limitations (Sec. 182 R. S. 1939); that the court had no jurisdiction to add new parties-plaintiff in the action, to include new claims, nor to permit recovery on behalf of the heirs of those who had died; and that all rights under the contract were personal to those signing and, upon the death of any of them, their rights passed to their personal representatives and not to their heirs. Appellant further contends that, since no substitution was made after the death of the two original plaintiffs, the court had no jurisdiction to permit recovery on their behalf. Laws 1943, p. 353, Sec. 22; R. S. A., Sec. 847.22. Respondents' answer is that the action was one in equity involving the pursuit of funds derived from the sale of trust property; that failure to file claims in probate court was of no consequence because the probate court had no equity jurisdiction; that, if claims had been filed in the probate court, the court could have acquired no jurisdiction to pass upon them; and that, if the action was at law, the revival of the action by the original plaintiffs after Webb's death, operated for the benefit of all

the heirs and not alone for those who signed the contract or were parties-plaintiff in the original action.

The count upon which the judgment was obtained was an action at law for damages for breach of a written contract. The pre-trial order, entered on stipulation of the parties, was that count one should "be tried as a jury action." It was so tried, and the verdict upon which the judgment was rendered was directed by the court. It is now too late to contend the action was one in equity. In support of the proposition that the revival of the original cause against Webb's estate was for the benefit of all the heirs, respondents cite cases involving class suits instituted within proper time or where action was upon the whole claim. We do not consider the cases applicable.

In this cause, prior to the filing of the third amended petition, the original plaintiffs had only sought to recover for their own interests, 6/8 of the actual damages by reason of the alleged breach of contract, that is 6/8 of the difference between the original mortgage indebtedness and the sale price. It is clear from the record that no class action was pending at any time within one year from the date of the first publication of notice of administration. It was not until the third amended petition was filed on December 7, 1945 that any claim was made for the interests of other heirs of Frank Harra, or for other parties to the contract, and no attempt was made to collect the full difference between the original indebtedness and the sale price until that time. The claims of the parties not suing were barred by the statute of limitations. Sec. 182 R. S. 1939. The court erred in permitting the original plaintiffs, on December 7, 1945 to convert the cause into a class action and seek to recover and to thereafter recover for the interests of contracting parties whose claims were barred by limitation. The surviving original parties-plaintiff were not entitled to recover as a class and recovery on behalf of all heirs and all contracting parties and for the entire difference between the incumbrance and the sale price. They were only entitled to recover for their own interests and damages resulting from the breach of contract. It will be unnecessary to determine whether a class action would otherwise be permissible or whether the parties-plaintiff could change a pending action seeking recovery for separate and distinct rights of the individual plaintiff, to a class action, where the parties-plaintiff seek to maintain the action as representative of the class and recover all damages to all parties for breach of the contract.

■ Did the amendments at the close of the evidence constitute a departure? We have seen that the original petition fixed the date for the beginning of the five year term as October 9, 1935, and the petition ■ was based upon the theory that an offer was made within the five year period, but the actual sale was fraudulently delayed until after the five year term expired. The third amended petition fixed the effective date of the conveyance as January 1, 1936. The

amendment allowed at the close of the evidence fixed the effective date of the conveyance as February 17, 1936, and the date of the sale as within the five year term. Appellant insists that the court abused its discretion in permitting the amendments at such a late date and that the amendments completely changed the cause of action sued upon. Appellant relies upon well established tests for determining whether the cause of action has been changed, towit, whether the same evidence will support both petitions and whether the same measure of damages will apply to each. Jacobs v. Chicago, P. & St. L. R. Co., (Mo. App.), 204 S. W. 954, 956. Appellant's theory is that evidence of a contract and deed dated October 9, 1935, was required to support the original petition, while ''a claimed conveyance dated February 17, 1936'' was required to support the amended petition. Appellant further says that the measure of damages on the original petition was ''based upon the separate interests of the twelve named plaintiffs,'' while the measure of damages on the third amended petition was ''the combined claims of the group as class plaintiffs.'' We have already dealt with the matter last mentioned in so far as the added interests are concerned.

The amendments changing the allegations concerning the effective date of the conveyance from October 9, 1935 to January 1, 1936, and later to February 17, 1936 and so bringing the date of the sale by Webb within the five year period did not change the cause of action. The action was still for damages for breach of the contract originally sued upon, dated October 9, 1935, regardless of conclusions of law as to its effective date. The conveyance made pursuant to the contract was still dated October 9, 1935, regardless of its effective date. The breach charged was the sale of the property and the failure to pay over funds in accordance with the alleged terms of the agreement. Whether the admitted sale by Webb on January 28, 1941 was within the five year term fixed by the contract was also a question of law. Respondents were not bound by these conclusions of law. D'Oench v. Gillioz, supra; St. Joseph & St. L. R. Co. v. St. L., I. M. & S. R. Co., supra. Further we do not believe that appellant was prejudiced by the amendments or misled as to the contract and conveyance and subsequent sale relied on as the basis for the action. Sonnenfeld v. Rosenthal, 247 Mo. 238, 152 S. W. 321. Courts are liberal in allowing amendments where the cause of action is not totally changed, and ''rules providing for amendment would be useless if petitions, in the first instance, must state perfect and complete causes of action.'' Jensen v. Hinderks, 338 Mo. 459, 92 S. W. (2d) 108, 109. The court did not abuse its discretion in permitting the amendments at the close of all the evidence. See, Secs. 81 and 82 Civil Code of Missouri, Laws 1943, p. 378.

■ Deducting the expenses of the sale? Section eight of the contract provided that ''. . . in the event the real estate above de-

scribed should be conveyed to a purchaser within the five year term hereinbefore provided all the proceeds of said sale above the amount necessary to reimburse party of the second part for the satisfaction by him of the present outstanding deed of trust thereon in the sum of $25,600.00 shall be paid to the parties of the first part . . ." Another provision expressly limited the allowable expenses for repairs on improvements. Webb was further required to pay all taxes and interest. In case of refinancing, no charge or expenses in securing the new loan could be included. Several provisions refer to obtaining "a price in excess of the amount of the incumbrance," or in excess of the amount invested by Webb.

There was evidence that, under the terms of the sale to the Government, possession had to be given immediately. It was necessary to pay the tenant $6,360.00 to cancel his lease and obtain a surrender of his rights in order to make the sale. (The reason for rejecting the previous option ▇ was because it was subject to the lease beginning March 1, 1941 and expiring March 1, 1942). The other necessary expenses of the sale amounted to $141.00. Appellant insists that the court erred in failing to require the deduction of the above items from the sale price. Respondents say the items were not deductible under section eight of the contract. Considering the contract as a whole and all of the surrounding circumstances shown by the evidence, it is our conclusion that "all the proceeds of said sale," above the $25,600.00 mentioned, necessarily must be construed to mean what it plainly says. We find no legal basis for making any additional deductions.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.